**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:                                                        :
                                                              : Chapter 13
TYRONE WALLACE,                                               :
                                                              : Case No. 14-10437 (ALG)
                                            Debtor.           :
------------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS CASE OR, ALTERNATIVELY, TO LIFT THE AUTOMATIC STAY**

Before the Court is a motion filed by the executor of the estate of David C. Williams, deceased (the "Movant"), seeking entry of an order (1) dismissing the chapter 13 case filed by Tyrone Wallace (the "Debtor"), pursuant to 11 U.S.C. §1307(e), for failure to file tax returns and/or for bad faith; or alternatively (2) granting relief from the automatic stay, pursuant to § 362(d)(1) of the Bankruptcy Code, to allow an inquest hearing to proceed in an Ohio probate proceeding. The Ohio court administering the Williams estate had earlier entered an interim default judgment against the Debtor as a sanction for discovery abuse. Movant contends that this judgment has preclusive effect in this Court and that the automatic stay should be lifted to allow an inquest on damages to proceed in Ohio, so that the Ohio judgment can liquidate Movant's claim against the Debtor (assuming his case here is not dismissed).

In the underlying Ohio probate court proceeding Movant alleged that David Williams, the decedent and author of a song called "Whole Lotta Shakin' Goin' On" (the "Song"), had never assigned to the Debtor rights to the song, although the assignment was apparently executed at the offices of the American Society of Composers, Authors and Publishers ("ASCAP"), and the Debtor received the royalties from the Song from 1997 until David Williams's death in 2005. In January 2010, Movant filed a complaint in Ohio seeking a declaratory judgment that the Debtor

had no rights to the Song and that all royalties paid him since the alleged fraudulent assignment in 1997, totaling over $600,000, should be repaid.

The Debtor secured periodic legal representation in Ohio but proceeded *pro se* throughout the majority of nearly two years of litigation concerning this matter. The Debtor, who is domiciled in New York, attended more than five hours of discovery in aggregate over two or three depositions in Ohio out of a total of eight requested sessions. In November 2012, the Debtor sought a protective order against further "unduly burdensome and oppressive" depositions, which was denied. Subsequently, in November 2013, a default judgment was entered against the Debtor by a Magistrate as a sanction for the Debtor's failure to comply with discovery orders and demands. The Magistrate's default judgment was adopted by the Probate Court of Franklin County Ohio, which ordered further that the "magistrate shall proceed with the hearing on damages, after which this will become a final appealable order." The judgment contained no findings of fact regarding the merits of the parties' claims to ownership of the song.

The Debtor filed for chapter 13 bankruptcy in February 2014. The damages inquest had been scheduled for March 2014 but was stayed due to the bankruptcy filing. The instant motions followed. We consider first the preclusive effect of the Ohio default judgment, as this issue affects resolution of the pending motions.

## DISCUSSION

Bankruptcy courts are bound by state court judgments when federal courts within the state where the judgment was entered would also be bound. *See Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987). Therefore, in this case, the Court must follow Ohio law in determining whether the Ohio default judgment has preclusive effect. In Ohio, a judgment can have res

2

judicata effect (judgment preclusion) or collateral estoppel effect (issue preclusion). We consider each in turn.

> **(a)    The Ohio judgment does not have *res judicata* effect because it was not a final, appealable judgment on the merits.**

Under Ohio law four elements must be shown for application of the doctrine of *res judicata*:

> 1) a final decision was rendered on the merits in the first action by a court of competent jurisdiction; 2) the second action involved the same parties or their privies as the first; 3) the second action raises issues actually litigated or which should have been litigated in the first action; and 4) there is an identity of the causes of action.

*In re Wendt*, 304 B.R. 779, 782 (Bankr. N.D. Ohio 2004), quoting *Bittinger v. Tecumseh Prods. Co.,* 123 F. 3d 877, 880 (6th Cir.1997). Thus, in Ohio, *res judicata* requires a final, appealable judgment on the merits. *See Schelich v. Theatre Effects, Inc.*, 111 Ohio App. 3d 271, 272, 675 N.E.2d 1349, 1350 (1996) ("a default judgment which continued the matter to determine damages failed to constitute a final, appealable order"), *see also Dunkle v. Children's Hosp. Med. Ctr. of Akron*, 5 N.E. 3d 131, 139 (Court of Appeals of Ohio, 9th District 2013) ("res judicata and the law of the case doctrine require a final order"), *Duncan v. U.S. Bank Nat. Ass'n*, 2:11-CV-913, WL 5408264 at *4 (S.D. Ohio Sept. 25, 2013) ("[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action"); *In re King*, 10-63468, WL 2837915 at *4 (Bankr. E.D. Ohio July 14, 2011) ("valid, final judgment rendered upon the merits"). Default judgments which determine liability subject to a damages inquest are not considered final judgments. *See Snyder v. Swick*, No. 2009 CA 0001, WL 3111838 at *2 (Ct. of App. Ohio Sept, 28, 2009). ("A default judgment which determines the issue of liability but continues the matter for a determination of damages is not a final judgment"), *see also Prather v.*

3

*Am. Med. Response, Inc.*, No. 20965 WL 31175365 at *2 (Ohio App. 9 Dist. October 2, 2002) ("A default judgment that determines liability only, but continues the matter for damages, is not a final judgment.").

In this case, the Ohio default judgment continued the matter for a damages inquest. The judgment was explicitly pronounced not yet final or appealable, as the court instructed that "the magistrate shall proceed with the hearing on damages after which this will become a final appealable order." Therefore, this Court is not bound by the Ohio default judgment under *res judicata* principles.

> **(b)    The Ohio judgment does not have collateral estoppel effect because Ohio courts do not give preclusive effect to a default judgment where the issue on which preclusion is sought was not actually litigated on the merits.**

Although the highest court in Ohio has not explicitly decided whether a default judgment can have collateral estoppel effect (issue preclusion), courts in Ohio believe that it would be inclined to adopt the approach taken by the Second Restatement of Judgments. *See In re Sweeney*, 276 B.R. 186, 192 (B.A.P. 6th Cir. 2002) ("The Supreme Court of Ohio has not spoken directly on this issue."), *see also In re Bletsch*, 07-17417, 2008 WL 657858 at *2 (Bankr. N.D. Ohio Mar. 6, 2008) ("the Court believes that, were the Ohio Supreme Court to pass directly on the question, it would adopt the Restatement's view that a default judgment generally does not have issue preclusive effect"). Restatement 2d of Judgments § 27 comment e states "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action." Following this approach, the Ohio judgment would not have collateral estoppel effect because the issue for which preclusion is sought - ownership of rights to the Song - was not actually litigated on the merits.

4

In reaching the above conclusion, it is noteworthy that there is authority in Ohio that there must be a final judgment on the merits for collateral estoppel to apply. One court has stated that under Ohio law, there are four elements necessary for the application of the doctrine of collateral estoppel:

> (1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; (3) The issue in the present suit must have been identical to the issue involved in the prior suit; and (4) The party against whom estoppel is sought was a party or in privity with a party to the prior action.

*Murray v. Wilcox*, 229 B.R. 411, 415-16 (Bankr. N.D. Ohio 1998). Whether or not a final judgment is required, it is clear that in order for collateral estoppel to be granted under the law of Ohio, the prior court must make express findings on the issue for which preclusion is sought, and the issue must have been actually and necessarily litigated. *See Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, 04-CV-74891-DT, WL 2660611 at *3 (E.D. Mich. Sept. 15, 2006) (applying Ohio law) ("Ohio courts give preclusive effect to default judgments only when there is an express adjudication of the issue."), *see also In re Sweeney*, 276 B.R. 186 at 193 ("a default judgment must contain express findings in order to be given preclusive effect in subsequent litigation between the parties"). "Express findings" means that the default judgment must contain sufficiently detailed findings and conclusions to demonstrate that the issue for which preclusion is sought was decided on the merits. *See id.* at 194 ("the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment); *see also In re Cunningham*, 12-34162, WL 1379136 at *7 (Bankr. N.D. Ohio Apr. 8, 2014) ("issue preclusion should only be applied to a default judgment if, in the prior proceeding, the plaintiff submitted admissible evidence to court from which the court then made sufficiently detailed findings"). This is the usual rule. *Crawford v. Franklin Credit Mgmt. Corp.*, WL 3377175 Slip

5

14-10437-jlg    Doc 20    Filed 07/24/14    Entered 07/24/14 11:31:42    Main Document
Pg 6 of 10

OP. at 18-19 (2d Cir. July 11, 2014) ("collateral estoppel applies only to issues that were litigated and actually decided in a prior case").

In this case, there were no findings of fact, express or otherwise, concerning ownership of the copyright, and the issue was not actually and directly litigated. Moreover, in the instant case, it would not be equitable to enforce the Ohio default judgment. One Ohio court has stated that in addition to the factors which must be found in order to apply the doctrine of collateral estoppel, application of the doctrine must be "equitable:"

> First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding. In addition, given other potential problems that may arise with applying the collateral estoppel doctrine to default judgments (e.g., due process concerns), this Court will only make such an application if the circumstances of the case would make it equitable to do so.

*In re Robinson*, 242 B.R. 380 at 387. In this case, where the key issue was not actually and directly litigated and there were no findings on the merits, it would not be equitable to apply the doctrine to the detriment of the Debtor, his creditors, and his estate.

### (c) The court should not grant relief from the automatic stay because the Ohio judgment does not have preclusive effect.

Movant's motion for relief from the automatic stay is premised on the proposition that the Ohio default judgment is preclusive and that this Court should allow the damages inquest in Ohio to proceed to final determination. Since this premise is mistaken, and since there is no showing that the Ohio case is ready for trial on the merits, there is no substantial basis to permit the Ohio inquest to go forward to the exclusion of a determination in this court.

In this circuit, the leading case of *In re Sonnax Indus., Inc.* 907 F.2d 1280, 1286 (2d Cir. 1990), sets forth twelve factors bankruptcy courts should use when determining whether litigation should be allowed to continue in a different forum. Although not all factors are relevant here, the majority of factors do not favor lifting the stay at this time to authorize Movant to pursue litigation in Ohio. In particular, the Ohio probate court is not a specialized tribunal with expertise over copyright matters; litigation in Ohio would likely delay resolution of this chapter 13, to the prejudice of the Debtor's other creditors; simultaneous litigation in different States would likely interfere with the bankruptcy case; the interests of judicial economy and the expeditious and economical resolution favor resolving the matter in one, efficient forum; the debtor is clearly not ready to proceed in the Ohio courts whereas all parties have counsel here; and the balance of harms weighs against lifting the stay because the debtor is in bankruptcy and pursuit of the Ohio action would likely lead to a serious financial burden, while Movant appears to be willing and able to litigate in New York. Further, ASCAP was originally a part of the Ohio litigation and may be a critical witness on the issue of copyright assignment. ASCAP has an office in New York City but may not be amenable to process in Ohio.

Therefore, the motion for relief from the automatic stay is denied.

### (d)    There is no basis to dismiss the case for bad faith because Movant has not established that the Debtor filed in bad faith.

Movant has also moved to dismiss this chapter 13 case on the basis that the Debtor filed in bad faith. Under 11 U.S.C. § 1307(c) a court may dismiss a case "for cause." "[A]lthough 11 U.S.C. § 1307(c) does not expressly equate bad faith with 'cause,' the bankruptcy court can also dismiss the petition or convert the case under section 1307(c) if the debtor files his petition in bad faith." *In re Eatman*, 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995). As the Court said in that

7

case, "Bad faith has both an objective and subjective element; the proponent of bad faith must show 'both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code.'" *In re Eatman*, 182 B.R. at 392, quoting *In re Love*, 957 F. 2d 1350, 1357 (7th Cir. 1992). Another decision in this Court has held that "Dismissal based on lack of good faith is determined on an *ad hoc* basis and only in 'egregious cases' entailing concealed or misrepresented assets and/or sources of income, excessive and continued expenditures, lavish lifestyle, and intention to avoid singular debts incurred through fraud, misconduct, or gross negligence." *In re Lin*, 499 B.R. 430, 435-36 (Bankr. S.D.N.Y. 2013). Factors considered by the *Lin* court included "whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor's actions affect creditors, and whether the debtor has abused the purpose of the bankruptcy code." *In re Lin*, 499 B.R. at 436. Additionally, '[b]ankruptcy courts have found that bad faith exists where the '[d]ebtor's reorganization essentially involves the resolution of a two-party dispute.'" *In re Lin*, 499 B.R. at 437, quoting *In re Fonke*, 310 B.R. 809, 817 (Bankr. S.D.Tex. 2004).

  Movant has not either objective evidence of a fundamentally unfair result or subjective evidence that the Debtor filed the petition for a fundamentally unfair purpose that is not in line with the spirit of the Bankruptcy Code. First, there is no reason to believe that the Debtor is not financially distressed. Although Movant claims that the Debtor concealed or misrepresented sources of income because he failed to list potential royalties from the Song, the Debtor's statement of financial affairs appears to represent his current financial situation because his former income from the Song was terminated and is now in escrow. Although Movant claims

8

that this is a case with a single creditor and a debt incurred through fraud, the petition lists numerous other creditors, and the default judgment carried no implication whatsoever that the copyright assignment was acquired through fraud. On the record to date, the motion to dismiss for bad faith is denied.

**(e)    There is no basis to dismiss the case for failure to file tax returns because Movant has not established the necessary facts.**

Finally, Movant seeks to dismiss pursuant to 11 U.S.C. §1307(e) for the Debtor's failure to file tax returns. A court may dismiss a case under §1307(e) if a chapter 13 debtor fails to file tax returns under §1308. Movant claims that the Debtor has not provided the chapter 13 Trustee tax returns for the years 2009 and 2010. However, § 1308 specifies that tax returns should be filed *with the appropriate tax authorities*. This section does not specify that tax returns must be filed with the chapter 13 Trustee and in any event, the chapter 13 Trustee has not made any claim regarding failure to file tax returns.

Movant further claims that the Debtor admitted during discovery in the Ohio probate court action that he failed to file tax returns from 1995-2002 and that his company, NiMani Entertainment Group, failed to file tax returns from 2003-2005. The Debtor, however, asserts that he has in fact filed all pertinent tax returns with the appropriate tax authorities. Based upon the record, there is a factual dispute as to whether the Debtor has filed all tax returns with the appropriate tax authorities. Without further evidence, the Court cannot determine the issue at this time.  Therefore, the motion to dismiss for failure to file tax returns is denied, without prejudice.

**Conclusion**

Based upon the record before the court (1) the motion to lift the automatic stay is denied, (2) the motion to dismiss for bad faith is denied, (3) the motion to dismiss pursuant to 11 U.S.C. §1307(e) for failure to file tax returns is denied, without prejudice.

IT IS SO ORDERED.

Dated: New York, New York
July 24, 2014

<u>**s/Allan L. Gropper**</u>
UNITED STATES BANKRUPTCY JUDGE